[Cite as *Wells Fargo Bank, NA v. Burd*, 2016-Ohio-7706.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Wells Fargo Bank, N.A., | : | |
| Plaintiff-Appellant, | : | |
| | | No. 15AP-1044 |
| v. | : | (C.P.C. No. 14CV-8577) |
| A. Christopher M. Burd f.k.a. Christopher M. Burd et al., | : | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on November 10, 2016

**On brief:** *Thompson Hine LLP, Scott A. King*, and *Terry W. Posey, Jr.*, for appellant. **Argued:** *Scott A. King*.

**On brief:** *The Manner Law Firm, LLC*, and *Mathias D. Manner*, for appellee A. Christopher M. Burd. **Argued:** *Mathias D. Manner*.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, P.J.

{¶ 1} Plaintiff-appellant, Wells Fargo Bank, N.A. ("Wells Fargo"), appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, A. Christopher M. Burd, on Wells Fargo's claims for judgment on a note and foreclosure of a mortgage. For the reasons that follow, we affirm in part and reverse in part.[1]

---

[1] The trial court's judgment entry also granted Wells Fargo's motion for default judgment against defendant Jane Doe, the name-unknown spouse of Burd. We note that portion of the judgment entry was not appealed.

## I.  Facts and Procedural History

{¶ 2}   In September 2006, Burd obtained a loan from Centennial Home Mortgage, LLC ("Centennial"), for $231,653, and signed a note ("the Note") promising to repay the loan.  The Note was secured by a mortgage ("the Mortgage") in favor of Centennial on property located at 6924 Shady Rock Lane in Blacklick, Ohio ("the Property").  The copy of the Note attached to the complaint giving rise to this appeal includes an allonge bearing a special indorsement from Centennial to Wells Fargo and an indorsement in blank by Wells Fargo.  The mortgage was also assigned from Centennial to Wells Fargo.

{¶ 3}   On April 22, 2009, Wells Fargo filed its first complaint seeking judgment on the Note and foreclosure of the Mortgage.  The complaint asserted that Burd defaulted on the Note and sought the principal due on the Note, along with interest from November 1, 2008, and other charges. Ultimately, Wells Fargo and Burd entered into a loan modification agreement on December 1, 2010 ("the Loan Modification Agreement"), and Wells Fargo voluntarily dismissed the first foreclosure complaint with prejudice.

{¶ 4}   Wells Fargo subsequently filed a second complaint on February 10, 2012, seeking judgment on the Note and foreclosure of the Mortgage.  The complaint asserted that Burd defaulted on the Note, as modified by the Loan Modification Agreement, and sought the principal due on the Note, along with interest from September 1, 2011, and other charges.  During the course of that proceeding, Wells Fargo and Burd participated in a court-sponsored mediation session on August 1, 2012, but were unable to resolve the case through mediation.  The trial court granted summary judgment in favor of Burd, concluding that Wells Fargo failed to satisfy a condition precedent for foreclosure of the mortgage or, in the alternative, that Burd had established an affirmative defense to foreclosure.

{¶ 5}   On August 18, 2014, Wells Fargo filed a third complaint seeking judgment on the Note and foreclosure of the Mortgage, which resulted in the present appeal.  The complaint asserted that Burd defaulted on the Note, as modified by the Loan Modification Agreement, and sought the principal due on the Note, along with interest from September 1, 2011, and other charges. Wells Fargo and Burd each moved for summary judgment.  The trial court denied Wells Fargo's motion for summary judgment and granted summary judgment in favor of Burd.  The trial court held that Wells Fargo failed

to comply with the face-to-face meeting requirement contained in 24 C.F.R. 203.604, which it concluded was a condition precedent to foreclosure.

## II. Assignment of Error

{¶ 6} Wells Fargo appeals and assigns the following single assignment of error for our review:

> The trial court erred in granting summary judgment to appellee and in overruling appellant's motion for summary judgment.

## III. Discussion

### A. Standard of Review

{¶ 7} An order granting summary judgment is subject to de novo review. *Capella III, L.L.C. v. Wilcox*, 190 Ohio App.3d 133, 2010-Ohio-4746, ¶ 16 (10th Dist.), citing *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 548 (2001). "De novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision." (Internal quotations and citations omitted.) *Holt v. State*, 10th Dist. No. 10AP-214, 2010-Ohio-6529, ¶ 9. Summary judgment is appropriate where "the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." *Cappella III* at ¶ 16, citing *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, ¶ 6. In ruling on a motion for summary judgment, the court must resolve all doubts and construe the evidence in favor of the non-moving party. *Pilz v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 04AP-240, 2004-Ohio-4040, ¶ 8. Therefore, we undertake an independent review to determine whether Burd was entitled to judgment as a matter of law on Wells Fargo's claims.

### B. Claim for Foreclosure of Mortgage

{¶ 8} The trial court granted summary judgment in favor of Burd based on its conclusion that Wells Fargo failed to comply with the requirements of 24 C.F.R. 203.604. That regulation, which governs mortgages insured by the United States Department of Housing and Urban Development ("HUD"), provides that:

> The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced, or at least 30 days before assignment is requested if the mortgage is insured on Hawaiian home land pursuant to section 247 or Indian land pursuant to section 248 or if assignment is requested under § 203.350(d) for mortgages authorized by section 203(q) of the National Housing Act.

24 C.F.R. 203.604(b).

{¶ 9} The regulation further provides an exception to the face-to-face interview requirement if certain conditions apply. 24 C.F.R. 203.604(c). One circumstance in which a face-to-face interview is not required occurs when "[a] reasonable effort to arrange a meeting is unsuccessful." 24 C.F.R. 203.604(c)(5). The regulation specifies that a reasonable effort to arrange a face-to-face interview shall consist of at least one letter sent to the mortgagor by certified mail and at least one trip to see the mortgagor at the mortgaged property, unless the property is more than 200 miles from the mortgagee, its servicer, or a branch office of the mortgage or its servicer, or the mortgagee does not reside in the mortgaged property. 24 C.F.R. 203.604(d).

{¶ 10} With respect to the exceptions to the face-to-face meeting requirement, Wells Fargo asserted that it sent a letter to Burd by certified mail on January 10, 2014, inviting him to participate in a face-to-face meeting to discuss mortgage payment assistance options. Assuming for purposes of analysis that this letter would have been sufficient to satisfy the first step necessary to demonstrate a "reasonable effort to arrange a face-to-face meeting with the mortgagor," as defined by 24 C.F.R. 203.604(d), there was no evidence that a representative of Wells Fargo made a trip to see Burd at the mortgaged property, nor did Wells Fargo assert that any such visit took place. In addition, Burd attested that Wells Fargo had never sent a representative to the property. Therefore, Wells Fargo was not exempt from the face-to-face meeting requirement under 24 C.F.R. 203.604(c)(5) by establishing that a reasonable effort to arrange a meeting was

unsuccessful.  Similarly, there was no evidence that any of the other exceptions to the face-to-face meeting requirement set forth in 24 C.F.R. 203.604(c)(1) through (4) applied in this case.  Accordingly, it is appropriate to consider whether Wells Fargo complied with the face-to-face meeting requirement under 24 C.F.R. 203.604(b).

{¶ 11} In support of its motion for summary judgment, Wells Fargo submitted an affidavit from Maynhia Her, who held the title of Vice President Loan Documentation with Wells Fargo.  This affidavit contained several assertions that are relevant to determining whether Wells Fargo complied with the requirements of 24 C.F.R. 203.604.  She asserted that Burd's last payment was received on September 15, 2011, and was applied toward the payment that had been due on September 1, 2011.  She further asserted that Burd's account was due and owing for the October 1, 2011 payment, with interest running from September 1, 2011.  Finally, she claimed that a face-to-face meeting occurred between Wells Fargo's counsel and Burd on August 1, 2012 as part of a court-sponsored mediation during the second foreclosure case.  Burd also submitted an affidavit in support of his motion for summary judgment, in which he admitted that he attended the court-sponsored mediation in August 2012, but denied that he had any subsequent face-to-face meeting with a representative from Wells Fargo.

{¶ 12} By asserting that Burd's account was due and owing from October 1, 2011, and that it participated in a face-to-face meeting with Burd on August 1, 2012, Wells Fargo effectively admits that it did not have a face-to-face meeting with Burd "before three full monthly installments due on the mortgage [were] unpaid" as required by 24 C.F.R. 203.604(b).  Wells Fargo argues, however, that it complied with the regulation because the face-to-face meeting with Burd occurred before it filed the third foreclosure complaint.  Wells Fargo notes that 24 C.F.R. 203.604 itself does not specify a penalty for failing to have a face-to-face meeting within the time provided in the regulation.  It further argues that, under the HUD regulatory scheme, a lender that fails to comply with the servicing regulations will not be denied federal loan-insurance benefits, but may be subject to civil penalties.  Thus, Wells Fargo claims, when a mortgagee fails to attempt to arrange or conduct a face-to-face meeting within the deadline set forth in 24 C.F.R. 203.604(b), the regulation should be read to permit the mortgagee to "cure" this non-compliance by attempting to arrange or having the meeting before filing for foreclosure.

{¶ 13} Wells Fargo also cites to decisions from the Seventh District Court of Appeals holding that the deadlines set forth in 24 C.F.R. 203.604 are "aspirational," while the requirement of conducting the face-to-face meeting is mandatory. *PNC Mtge. v. Garland*, 7th Dist. No. 12 MA 222, 2014-Ohio-1173, ¶ 30; *Bank of Am. v. Bobovyik*, 7th Dist. No. 13 CO 54, 2014-Ohio-5499, ¶ 35-36. In *Garland*, the Seventh District primarily focused on whether compliance with HUD regulations was a condition precedent to foreclosure or an affirmative defense to a foreclosure action. After examining the general regulatory scheme, the court concluded that HUD clearly intended for mortgagees to comply with the regulatory requirements, including the face-to-face meeting requirement, before commencing a foreclosure action. Thus, the court held that compliance with the regulatory provisions was a condition precedent to foreclosure. *Garland* at ¶ 27. The *Garland* court noted that the Second District Court of Appeals had reached the opposite conclusion, reasoning in part that construing the regulations as conditions precedent would have the effect of forever precluding foreclosure if a mortgagee failed to comply with a regulatory deadline. *Id.* at ¶ 29, citing *Wells Fargo Bank, N.A. v. Goebel*, 2d Dist. No. 25745, 2014-Ohio-472, ¶ 23-25. Expressing its disagreement with the Second District, the *Garland* court noted in dicta that the specific deadlines set out in the regulations were "aspirational," while the obligation to perform the duties under the regulations was mandatory. *Garland* at ¶ 30. The court also offered the following example:

> [I]f a bank commences a foreclosure action at the earliest possible time, the day after the third payment is missed, the bank's failure to have the face-to-face meeting *within the first three months of default*, would, absent one of the exceptions, bar the bank from filing the foreclosure action. On the other hand, if the bank waited until the borrower missed six payments, for example, the bank's failure to have the face-to-face meeting *within the first three months of default*, would not bar the foreclosure action, as long as the bank held the meeting sometime before filing the action; e.g. in the fourth or fifth month.

(Emphasis sic.) *Id.* Later, in *Bobovyik*, the Seventh District affirmed a grant of summary judgment in favor of the lender, holding in part that summary judgment was not precluded where the lender sent the borrower a letter attempting to arrange a face-to-face

meeting four months prior to filing for foreclosure, despite the fact that the letter was sent more than two years after the initial notice of default with intent to accelerate. *Bobovyik* at ¶ 39. Although we acknowledge the dicta in the *Garland* decision and the holding in *Bobovyik*, those decisions are not binding on this court; they are also distinguishable from the present case.

{¶ 14} Under the circumstances presented in this case, we conclude that Wells Fargo failed to comply with the requirements of 24 C.F.R. 203.604(b), and that Burd was entitled to summary judgment on the mortgage claim. As explained above, Wells Fargo has sought to foreclose on the Property three times; the second and third foreclosure complaints both sought to recover interest from September 1, 2011, and, therefore, appear to be based on the same default date. There is no evidence that Wells Fargo attempted to comply with 24 C.F.R. 203.604(b) prior to filing the second foreclosure complaint, and summary judgment was granted in favor of Burd due to that failure to comply. Wells Fargo now effectively seeks to revive the second foreclosure complaint based on the fact that it participated in an unsuccessful court-sponsored mediation session during the litigation resulting from the second foreclosure complaint. In evaluating the parties' summary judgment motions, the trial court assumed for purposes of analysis that the court-sponsored mediation could constitute a "face-to-face meeting" for purposes of 24 C.F.R. 203.604(b), and without deciding the issue, we will do the same. Given that assumption, however, we find that Wells Fargo failed to comply with either the letter or the spirit of the regulation. *See, e.g., Mtge. Assocs. v. Smith*, N.D.Ill. No. 86 C 1 (Sept. 16, 1986) ("Plaintiff has failed to comply with either the letter or the spirit of the HUD servicing requirements."). This is not a case where, as theorized in *Garland*, a bank holds a face-to-face meeting a few months after a third payment is missed but prior to filing foreclosure. Rather, in this case, Wells Fargo and Burd participated in a court-sponsored mediation session *after* a foreclosure proceeding had been initiated. Outside of that court-sponsored mediation, Wells Fargo made no other attempt to comply with the requirements of 24 C.F.R. 203.604(b). It is true that this appeal arises from a new foreclosure complaint filed after the unsuccessful mediation session occurred, but that new complaint was based on the same alleged default as the second complaint. Thus, Burd had no opportunity to avoid foreclosure arising from that alleged default. Given this

scenario, we conclude that Wells Fargo failed to comply with the requirements of 24 C.F.R. 203.604(b) and Burd was entitled to summary judgment on Wells Fargo's mortgage claim.[2]

### C. Claim for Judgment on the Note

{¶ 15} Wells Fargo also argues that the trial court erred by granting summary judgment in favor of Burd on Wells Fargo's claim for the balance due under the Note. Wells Fargo asserts that 24 C.F.R. 203.604 only requires a face-to-face meeting before seeking foreclosure on a mortgage and does not govern a claim for monetary judgment on a note. Burd responds that Wells Fargo can not pursue a personal judgment against him on the Note because it expressly waived the right to do so under the terms of the Loan Modification Agreement.

{¶ 16} As discussed above, the trial court focused on 24 C.F.R. 203.604(b) and concluded that Burd was entitled to summary judgment because Wells Fargo failed to comply with the requirements of that regulatory provision. The trial court's judgment did not contain any separate discussion or analysis of Wells Fargo's claim for judgment on the Note. The default clause in the Note states that HUD regulations may limit a lender's rights to require immediate payment in full in the case of default and states that the Note does not authorize acceleration when not permitted by HUD regulations. Wells Fargo correctly observes, however, that 24 C.F.R. 203.604 addresses the steps that must be taken "before foreclosure is commenced" and does not address acceleration of a note. *Compare* 24 C.F.R. 201.50(a) (requiring a lender to discuss the reasons for default and seek a cure in a face-to-face meeting or by telephone before taking action to accelerate the maturity of a manufactured home loan). Thus, failure to comply with 24 C.F.R. 203.604 does not appear to prohibit Wells Fargo from attempting to recover a personal judgment against Burd under the Note.

{¶ 17} The Loan Modification Agreement entered between the parties stated that Burd had filed for bankruptcy in September 2007 and had received a discharge in bankruptcy in February 2008. The Loan Modification Agreement also stated that, during

---

[2] Wells Fargo asserts that the effect of the trial court's summary judgment decision is to permanently bar foreclosure on the mortgage. The question of whether Wells Fargo could demonstrate compliance with the regulatory requirements in another foreclosure action, perhaps based on a different default date, is not before us and we reach no conclusion as to that question.

the course of the bankruptcy proceeding, Burd never reaffirmed his debt under the Note. The agreement further provided that Wells Fargo acknowledged that Burd had received a discharge in bankruptcy and that he had no personal obligation to pay the debt secured by the Property.  Despite this language in the Loan Modification Agreement, it appears that Burd's personal obligation under the Note may not have been discharged via bankruptcy. In his memorandum in opposition to Wells Fargo's motion for summary judgment, Burd asserted that he and Wells Fargo executed a reaffirmation agreement on January 23, 2008 as part of the bankruptcy proceeding that affirmed his personal obligation on the Note.  Later, in his motion for summary judgment, Burd asserted that the Loan Modification Agreement, which was entered into on December 1, 2010, voided his personal liability on the Note and that Wells Fargo breached the Loan Modification Agreement by seeking personal judgment on the Note.  As part of this argument, Burd asserted that both parties were mistaken as to the validity of the reaffirmation agreement entered into during the bankruptcy proceeding.  Given this dispute between the parties about the effect of the reaffirmation agreement entered in the bankruptcy proceeding and the effect of the Loan Modification Agreement on Burd's personal liability under the Note, it appears that there were genuine issues of material fact with respect to Wells Fargo's claim for judgment on the Note.  Accordingly, the trial court erred by granting summary judgment in favor of Burd on the claim for judgment on the Note.  Wells Fargo's assignment of error is sustained in part and overruled in part.

## IV.  Conclusion

{¶ 18} For the foregoing reasons, Wells Fargo's sole assignment of error is sustained in part and overruled in part.  We affirm the judgment to the extent it granted summary judgment in favor of Burd on Wells Fargo's claim for foreclosure on the Mortgage, and we reverse the judgment to the extent that it granted summary judgment in favor of Burd on Wells Fargo's claim for judgment on the Note.  This matter is remanded to the Franklin County Court of Common Pleas for further proceedings in accordance with law and consistent with this decision.

*Judgment affirmed in part,*
*reversed in part; and cause remanded.*

BRUNNER and HORTON, JJ., concur.

———————————